Good morning, Your Honors. May it please the Court, I'm Deputy Attorney Pamela B. Hooley, on behalf of the Respondent and Appellant in this case. This appeal was brought because the district court committed error when it granted Mr. Tolliver's petition. First, under clearly established Supreme Court authority, the only process due to Mr. Tolliver was an opportunity to be heard and a decision informing him of the ways he fell short. He got that process. Second, the district court relied on the Biggs dicta as a basis for granting parole. Biggs is only dicta. This Court has disavowed it in a published decision in Sass. This Court refused to apply it in an unpublished decision, Conkler, and it recently refused to apply it in another unpublished decision, Culverson, because under Mousladen and under the even newer Supreme Court case, Landrigan, unless the Supreme Court has spoken on a question, the district courts and the circuit courts should not import a test that has not been used. Kagan in your view specifically, how pointed would the Supreme Court decision need to be for it to be applicable in your view? I think it has to be directly on point, Your Honor, given the decision in Mousladen where there was a test concerning participation by a State actor that could be deemed to be a violation of the right to a fair trial. When the influence was by members of the public, the Court said that was not enough because there was no holding on that specific point. Similarly, in Landrigan, when the Court was looking at whether there was a problem with counsel's performance in presenting mitigating evidence, there were cases that held that when counsel decided not to do it improperly, that could be ineffective  There were cases when the other one was not effective. Well, let me just stop with what we do have, because those are really trial procedure cases, and it seems to me it's a hard stretch to try to apply those in this situation. So if you take Greenholz, which is the applicable Supreme Court law, which basically says if you have language that creates a presumption, as California statute does, then you do have a liberty interest in parole. So are we on the same page that far? I would agree that this Court has found there is a liberty interest, and I understand that's been decided by this Court. The warden's position would be, however, that that's not necessarily clearly established. But even if it were, Your Honor ---- Maybe you could explain to me, because I think we need to start somewhere, and it may be that if we get on the same platform that you would then diverge from what that means. But if you take Greenholz and Allen read together, what do you think those cases stand for? Those are Supreme Court cases, correct? Yes, Your Honor. Presuming a liberty interest does exist in parole, presuming the State statute creates one, I think those cases tell us that the process that would be due, because this is such a minimal liberty interest, it's merely a hope of release, the only process that is due, the only process that is necessary to assure that the decision is not arbitrary, is an opportunity for the inmate to be heard and a decision explaining to him how he fell short. Indeed, in Greenholz, the Court refused to require the board to set forth specific evidence that it must cite to support its decision. And if it didn't need to set forth specific evidence, how can it be that the sum evidence test applies? Similarly, in Greenholz, the Court contrasted parole decisions, which are subjective, predictive, and there's one other difference, non-adversarial, apologies, whereas disciplinary decisions are retrospective, adversarial, and objective decisions that need to be made. So it wouldn't make sense for the same test to apply in this context. And given that the Supreme Court has not yet said that this test applies here, it's not appropriate for the district courts to assume that it does, because the new cases make it clear that under AEDPA, the only jurisprudence that's relevant is that of the United States Supreme Court. And unless the United States Supreme Court has given this Court a green light to bring in a test, it shouldn't go there, and therefore, the State court decisions were not an unreasonable application of clearly established Federal law. I'm not sure I understand your argument. Are you suggesting that under Greenholz and Allen, assuming there is a liberty interest in parole, that all that is needed is a hearing, and it doesn't matter what reason is given, no matter how far out, that you have your skin is the wrong color, or perhaps that's not a good example, but no matter how unsupported by anything in the record, that's all that's needed? At this point, yes, Your Honor, because Greenholz noted that the liberty interest was that minimal, that the process alone was sufficient, certainly if there were a completely arbitrary decision, that might present a different question. But here we don't have that. In the State of California, the inmate is given individualized consideration. There's the exercise of discretion, and there is a decision that is presented to him explaining the reasons. And that decision was reviewed by the State courts, which are presumed to be able to interpret and determine whether there was a violation of his Federal due process rights. The State courts found there was not, and unless the State courts unreasonably applied the clearly established law at the time. Kagan. That's the test, isn't it? Exactly, Your Honor. It's not what the parole board did. It's what the parties did. Is that your position? Yes, Your Honor. And that's where we're having a problem now in the district courts. The district courts are using some of the decisions from this case to get into actually inserting themselves in the parole suitability determinations and determining whether they find the inmate suitable. That's not the question, and that's one of the problems in Tolliver's argument on appeal where he suggests that 2254d doesn't apply. He's trying to say that his petition attacks the Governor's decision. That's not what it does. It attacks the State court judgment that rejected his claims about the Governor's decision. 2254d applies to review his case as this Court held in White and as reflected in Shackleford. The second issue that we need to discuss is related to Mr. Tolliver's cross-appeal concerning the appropriate remedy. And in any case where there's a due process violation, the appropriate remedy is further process. He suggests that release would be appropriate, and that would be usurping the State's  And I think that's a very large State area of concern. Well, what if there is a position somewhere between release and your position, which is that we shouldn't even be going there? What about some kind of a remand? Because this is a very odd case where the parole board, he served more than his minimum term. And the parole board has said he should be released. Parole board gives the reasons, and then the Governor basically says, well, it was a bad crime, denied. Is there a middle ground here for some kind of an additional review by the Governor? No, Your Honor. Two problems with that question not with the question, but it's the Ninth Circuit case law that makes it so confusing, Your Honor, for us, for the courts, and I'm sure for this panel as it sees the decisions out there from the Ninth Circuit and from the U.S. Supreme Court. You've invoked the phrase minimum term. That arises in Irons. The Irons rehearing petitions are pending. Both sides have answered. Our position on the rehearing was that the minimum term language itself is a questionable route to take, because to the extent Irons suggests that possibly after the minimum term, considering the crime would violate due process, that doesn't make sense in California, because an inmate can't be considered for parole until he's served the minimum term. So the courts' dicta there would suggest that the board and the Governor never could consider it. But with respect to the difference between the Governor's decision and the board's decision, the Governor has independent authority to review the record and come to a different conclusion. But the Governor's decision does need to be guided by the same rules and regulations as the board, correct? That is correct, Your Honor. He was given the authority by Proposition 89. He was required to look at the same factors that the board did, but he has the authority and was given that authority to be a check on the board. And if he can't come to a different conclusion, then the authority would be superfluous. He need not be a rubber stamp. He is empowered to have a different opinion. And as long as his opinion follows California law, which doesn't violate due process, then that opinion was properly upheld in the State courts, and the district courts shouldn't have granted relief. So in the case of Mr. Tolliver, who seems to be that the main thing standing between him and parole, if you read the Governor's decision, is his crime of conviction, in your view, if they continue to deny him parole, will there at some point be a point in which due process is breached because of the mandatory parole statute? That's not for me to say. That's for the Supreme Court to determine that it is going too far. California has found that it doesn't violate due process to continue to rely on the crime when, as here, it contains elements beyond the minimum necessary to sustain that conviction because that's the very idea of parole. You're assessing whether it's safe to put someone back out on the streets, and you want to be very cautious, and I should say the Governor and the board do, not the court. It's almost impossible to commit a murder without doing something more than just the absolute minimum that you need to commit it. I mean, this is a – how does this murder differ from any other? This murder was committed in response to a threat to the man's home merely, a thought that a gang member might come and shoot up his house. He went and he armed himself. He armed a co-defendant. They went looking for someone before there were any deaths. Second-degree murder? It was a second-degree murder conviction, Your Honor. And that makes it worse than most murders. There's elements of premeditation in arming himself and his co-defendant and searching out trouble when it had not yet come to him or not seeking help in another  And the Governor is entitled to do that. It was preemptive war. Because he went looking for someone and wound up shooting someone in the back who'd never – who was innocent and running away. Well, that follows the same pattern I just mentioned. What is it that, in your view, takes this beyond second-degree murder? It certainly is not first-degree murder, is it? It wouldn't qualify for that. I can't say that it wouldn't, Your Honor, because it may have been that it could have qualified for a gang special circumstance, and I'd have to go back and check the record more thoroughly for those points. But the fact that he did arm himself and not seek help in another case is not first-degree murder. Well, but everybody keeps saying this thing over and over, it goes beyond, you know, I'm just trying to understand what does that mean, because I'm just – people use a lot of phrases in these cases, but then they never really stop and analyze them. So I'm trying to take each one of these little phrases, and I agree with you, it's not always so easy given the past law. But what, in your view, makes this more or has different circumstances than second-degree murder? One of the different second-degree murder circumstances that I might think of is when someone gets a second-degree murder because they were in the wrong place at the wrong time and the co-defendant was the only one who fired the gun. I think that might be a little different. Do you think this kind of discussion, this is what's bothering me, is this really a question of Federal law that we are supposed to be dealing with? No, Your Honor. Again, you're correct. That's what we are. Well, no, I'm just asking the question, because in one sense it is a question of Federal law if there's supposed to be some evidence to support the conclusion under Federal law, and the conclusion seems not to have any evidence. I mean, just assuming that this looks to us – I'm not saying that it does, but, you know, just assuming it looks to us like just an ordinary second-degree murder, then you could say, well, there's no evidence in the Federal sense. And yet to say that looks like you're deciding a question of State law. I find this very difficult. It is a difficult question, and it goes back again to whether the sum evidence test even applies, and given Landergan and Mousladen and the language in Greenholz, that's probably why that test doesn't apply, because parole decisions are predictive. You're trying to guess, is it safe to let the inmate out? It's not a question of did he do X or Y and he should be disciplined so we can see, yes, there's some evidentiary basis for that. This is more about the State developing a parole system, an inherently State question, coming up with a system that gives the inmate the opportunity to present his case, and then the State court's reviewing that decision and upholding it. And there's no clearly established Supreme Court authority that precluded that, and on that basis the district court should be reversed. And unless the Court has additional questions, I would like to reserve my remaining time for rebuttal. Thank you. Are there any further questions? Thank you. You may. Good morning. My name is David Porter, and I represent the Petitioner, Appellee, and Cross Appellant Clarence Tolliver. I'd like to begin my remarks by addressing Chief Judge Schroeder's question, because I think that gets to the nub of the question, the matter here. Is this a matter of Federal law? It is a matter of both Federal and State law. And the most important thing that I could emphasize for the Court today is that this, the Lifer cases, must be addressed in a two-step process. The first step in the process, and it's what a lot of courts do, is to determine whether there's some reliable evidence to support either the Board or the Governor's decision. But what most courts don't do, and what the Board and the Governor don't do in many, many cases, is the second step. And Judge Patel emphasized this in her decision in Willis v. Kane. She says, having determined that there is a due process right and that some evidence is the evidentiary standard for judicial review, the next step is to look to State law, because that sets the criteria to which the some evidence standard applies. One must look to State law to answer the question, what some evidence of what? And then at the bottom of page 39 in our red brief, we say what that is. The critical question the Governor was supposed to decide in determining whether releasing Mr. Tolliver posed, quote, an unreasonable risk of danger to society, that's from the California Code of Regulations, Section 2402, subdivision A of Title 15, such that, quote, consideration of the public safety requires a more lengthy period of incarceration for this individual. That is the Penal Code, Section 3041. And that is a question, that refers to State law? Yes. Okay. So the next level of confusion for me is, this is a habeas petition. Right. It was not always clear that habeas law would apply. But I guess that's what applies now. So we're reviewing – what are we reviewing? Are we reviewing directly the parole board decision, or are we reviewing the State court decisions that – on habeas petitions that are petitions to review the parole board decision? I think that the target of the Court's concern should be the Governor's decision decision. That is what we are challenging. Now, of course, that was – that decision was also reviewed in post-conviction proceedings in the California State courts. But as Judge Posner made clear in the Cox decision, you should look at the target of the decision. What is keeping this person in? And it's very clear in Mr. Tolliver's case that the only thing between him and freedom is the Governor's decision. Was that applying a habeas standard? Cox? The Seventh Circuit case. Yes. The Seventh Circuit case of Cox was a decision – was a challenge against a prison disciplinary proceeding. And as Judge – and it was brought in habeas, and Judge Posner said that 2254D1, the standard of the Antiterrorism and Effective Death Penalty Act, did not apply to such a proceeding. And that is our first – But that's – but you see, that's why Cox is troubling, because it seems to me that we have to – it may or may not apply to a disciplinary proceeding, but that's not the issue here. And do you have any authority that it wouldn't apply to a parole proceeding? There is no authority that I could find directly on point as to a parole proceeding. But I believe – Okay. So let's assume – let's assume that you're – we don't accept your first argument and that we are bound by the habeas standards. Right. We can go to Judge Schroeder's question. If we review the California Court of Appeal, which appears to be the last reason decision, they issue a decision that says the record contains sufficient evidence to support the Governor's decision based on the nature of the commitment offense and other factors. If habeas applies, isn't it the California Court of Appeals decision that we're looking to? Yes. Okay. And if the California Court of Appeals says that there's sufficient evidence based on the nature of commitment and other factors, that's certainly not contrary to any Supreme Court law, correct? That is contrary to Hill v. Superintendent, which says that some reliable – that a decision of the prison board must be supported by some reliable evidence and not be otherwise arbitrary. Well, you may mean it's an unreasonable application. That's what I'm getting to, is it's not really a contrary. Contrary to, yes. So there isn't really any contrary. Then the only question is, is it an unreasonable application? That's correct. Yes. And if the Attorney General were correct on this point, we would never have any habeas granted anywhere in the country. Right? She's saying, well, we have Nebraska that has a statute and the Supreme Court has said that parole statute has – creates a protectable Federal liberty interest in parole that's protected by due process. We have Montana and Allen, but because the Supreme Court hasn't said, oh, well, the California statute also provides a – a protectable due process liberty interest, we can't have – there's no clearly established Federal law and courts are prohibited from granting Federal laws. See, I don't think that's what she said. Go ahead. No, go ahead. She said there has to be a case directly on the court. Here's what I think she said. I'm sure she can stand up and tell you herself, but this is where you get to it. It's not that there isn't – that the Supreme Court has never considered the California case. It's that even in considering Greenholds, which might be considered comparable, that what the Supreme Court said is that we find nothing in the due process concepts as they have evolved so far that requires the parole board to specify the particular evidence that – on which it rests its determination. So I think what she's saying is there's never been a Supreme Court case that says you need some decision as long as it's made in a rational manner. Right. But Greenholds – all Greenholds says is the board doesn't have to articulate the evidence. But Hill – Superintendent v. Hill says there has to be some reliable evidence or not otherwise arbitrary. And so – So if we – let's just say that we take those three cases, you know, Hill, Allen, and Greenholds. There's a liberty interest. Right. There has to be – there has to be an articulable reason. You have to have a process in terms of a hearing. Then we get back to the Governor's decision here, which rests primarily on the crime of conviction. Right. And if the Governor says in his view the crime of conviction is such that it still represents dangerousness, how do we second-guess that? Well, it's not second-guessing. And that's why it's so important for the Court to take that second step and determine whether that evidence that the Governor has cited and relied on means that the inmate is a current danger to society. And how can you say after 26 years on a 17-to-life sentence when Mr. Tolliver – and this is undisputed – has a virtually unblemished record in the institution, how can it be said, unless it's completely arbitrary, that he is a current danger to society if released? They have the prison psychologists who say he presents a low risk of danger. The prison counselors who know him see him every day saying he is a low risk to society. As far back as 1991, the Category X program, where he's gone through extensive psychological reviews, the psychiatrist says, given the evidence reviewed during the course of this assessment, his potential for future violent actions presently seems marginal. We've read that. So that makes the State decision an unreasonable application of Federal law to these facts? Exactly. Well, so does that mean that we are now going to have to go through every parole decision to determine whether or not it's an unreasonable application, to see whether we agree with, fight about whether it's reasonable, unreasonable? I just – I'm having some problem here seeing our role in habeas consistent with the statute, if you are correct. This role – the Court's role is crucial in this aspect. What has happened right now under Beggs and Sass and Irons is that the state of the law is very unclear. Beggs and Sass appear to be at best intention. Those are our court cases. If you took a clean slate and simply said, then Beggs and Sass and Irons had never come down. Okay. Could you be here today? I – the Attorney General might not have appealed. The district court, would you be – I don't think that the Attorney General would have appealed the case. We have a very conservative magistrate judge and district court judge who are not known for granting habeas, who have both granted habeas. The district court judge denied the motion to stay the judgment even after Irons was decided, saying there is no reasonable – that they do not present a substantial case on the merits to win in the court of appeals. So we might not be here. Wasn't that based on Beggs and Sass? Well, and Irons. Yeah. Right. I mean, you know. Right. But you see, this is a – this case kind of also stands in contrast that we've seen a number of California State cases recently where they have actually overruled the parole board. I don't know about the Governor. Maybe you can tell me if there are any cases where the Governor has been overruled. But certainly we've seen the parole board overruled. In this case, the California court of appeals says no, that there is some evidence. When the California court of appeals says that, and there is at least evidence articulated even if we disagree with it, I'm not quite sure how we filter that through habeas. Well, I think what the court does is it takes the second step. It says, yes, the state court of appeals said there was some evidence to support the fact that the crime was heinous, atrocious, and cruel. Okay. But that's only the first step. And the second step that wasn't done by the court of appeals here, but that was done by the district court, is whether that evidence means that Mr. Tolliver currently poses a risk of danger to society if released. And we're not stepping on the State's toes here because it's the State statute. So if, though, even under the State statute, if you have a crime that's particularly heinous, and then you run it through the factors, the result can be that a judge can be made that even though it's an old crime, that a heinous crime can still be a basis for future dangerousness, correct? Yes. The regulations are especially heinous, atrocious, or cruel. Right. That can be a factor. Okay. So let's say that then we keep kind of drilling down further into the State. You know, we've got the State statute, and then we've got the regulations, and then we've got the subparts that relate to the heinous, particularly heinous crime. Right. For shorthand. If how are we to judge if someone says that it's particularly heinous and, ergo, it leads to potential future dangerousness, I'm not sure what our benchmark then is as a Federal court as opposed to were we the State court of appeals. I think you go to Judge Canby's remarks, which are what made this crime especially cruel, heinous, or atrocious? And I wasn't convinced by the Deputy Attorney General's response. These facts are very minimal in terms of second-degree murder, and that is the charge that he was convicted of. The magistrate judge. Well, that would be true on the day when he got into prison then. It doesn't change. That's correct. And so for a certain period of time, you can say. That's what I'm having trouble with. Well, here's the answer. Here's the answer. Okay. For a certain period of time, the Governor certainly can rely on that and say, yes, it's a very cruel and atrocious crime. And there's nothing on the other side of the ledger. He hasn't done programming. He doesn't have realistic parole plans. He doesn't have marketable skills. His institutional behavior is bad. So for years and years, if the other side of the ledger has nothing on it, then you can reasonably say and not arbitrarily say that crime is so bad. That is what we indicated in the Biggs Dicta. Exactly. And that is dicta. Because we said in Biggs this is not such a case. There might be such a case. This is the case. Well, then how. Trust me and come to government, this is that case.  So the Biggs was decided in 2003. And the court of appeals decision was the court of appeals decision here, the last reason decision in this case was in 2005, I think. If there has never yet been such a case until this one, how can it be clearly established that the State court should have reached a different decision in this case? Because the clearly established law is the general principle, the general principle where Hill v. Superintendent says that in many contexts, we require some evidence to support an administrative body's decision. That, combined with Greenholtz and Allen, say that there is a protectable liberty interest in parole and that that some evidence standard must be met. Now it's just the argument that was made to the. Is that the argument that was made to the California court of appeals? Oh, yes. Oh, yes. It's been made throughout. And the California courts have rejected the deputy attorney, the warden's argument here that there is no liberty interest. The California State courts have said consistently, Danneberg, Rosenberg, there is a Federal protectable liberty interest in parole. The question is how far it goes. I mean, here's what the Governor says in the end. He talks about why that his crime alone would be a sufficient basis to make him unsuitable. But he says, He's no doubt on the right road, but the standard by which I am governed is whether I believe his release from prison to parole at this time would pose an unreasonable risk of danger. And then the Governor concludes that that would be the case. All right. And their brief says, oh, he's yet to be, you know, he is not yet found suitable for parole. Well, but when? When? But that's the question. Yes. I, you know, were I the decision-maker in the first instance, that seems to me to be a different role than the court of appeals has, which is almost in the third instance. And if the Governor says no at this juncture, what I'm having trouble is deciding – I mean, you say this is the case, but, you know, on this continuum, if the Governor said no again and then again, that would be. Which he has. Not on this case. Yes. Well, he has in 2005, he was found suitable by the Board. Right. The Governor again. Right. In 2006, he was found suitable by the Board again. And so you're saying that if not now, then when? And is the when – how are we to judge the when? The when is governed by Hill, and you say is this an arbitrary decision or not supported by some reliable evidence? And I submit that it is. I have very brief time, and I just want to point out what the magistrate judge said was correct in this case. It's at page 31 of the excerpts of record. While it is perfectly fine to have a system where no possibility of parole exists for any murder, it is not perfectly fine to have a parole system that is based on misrepresentation. And that's what the California system is if it denies parole to someone like Mr. Tolliver. I ask this Court to grant Mr. Tolliver immediate release because he was – his parole date was January 21, 1995. Thank you. Thank you. The second step that Mr. Porter encourages this Court to take is one it's precluded from taking under AEDPA. The Court has suggested that it is bound by that decision, by AEDPA. It is. Well, the second step, though, counsel, if we were reviewing a case for total absence of evidence to convict, we would look to see whether there is evidence of what? Of a murder as defined by State law? I'm afraid I don't understand. Well, you're saying you can't take the second step. I mean, we can't look to State law at all. But if we're deciding whether there's a total absence of evidence in another case where the issue is was there any evidence to convict in the first place, the Jackson against Virginia standard, could any rational trier of fact, then we have to say, well, what was the State law? What was he convicted of in order to know whether there was evidence sufficient to convict him? That's true, Your Honor. But that's not the second step I'm understanding Mr. Porter to encourage. I'm understanding him to encourage you to ignore what the State law is. And State law in California has developed a system of evaluating suitability by looking at the crime. The crime is the first thing that's relevant under State law. The crime is the first thing that's listed in the regulations. The crime is the only thing that's listed in the penal code. Well, what about the California statute of regulations saying that the ultimate question is the dangerousness to the public? That's correct. And the regulations also say regardless of the length of time that has passed. And that's what the Governor was taking into consideration here. Mr. Porter asks when. When is up to the State courts. If the State courts determine that the Governor has gone too far, then we'd be in a different position. We wouldn't be questioning that was their right to interpret their own law. Or if the United States Supreme Court gets to the question in another case and finds that reliance on the crime indefinitely somehow implicates due process. We'd have a different question. But here we don't. And we are looking at what the State courts did, not the administrative decision. That's made clear in White v. Lambert, which came out after Cox and rejected the Cox decision, saying it's not appropriate to look at the target given the statutory language. Mr. Porter also speaks of the. It's kind of the same thing, because what the State court is saying is that there's some evidence in effect. And then wouldn't we have to benchmark that against how the State court or the State law defines this right to parole, which is through the regulations? Yes. And you'd merely then look to see whether there's any U.S. Supreme Court authority that finds the State court unreasonably determined that. But that is jumping over the cart before the horse with whether the sum evidence test actually applies. And, again, I think, unfortunately, this Court went down the wrong path a long time ago when it tried to clump together parole decisions and disciplinary decisions because they somehow affect the length of time an inmate has been in custody. That's not the case. Disciplinary decisions are very different. And the Supreme Court made that clear in Greenholds. And that's why it's clear that the sum evidence test shouldn't apply. Or, at worst, it's not clearly established that it does apply. And, therefore, there's no way the State courts could have unreasonably applied a law that was binding upon them. Well, if the argument I think that Mr. Tolver's counsel has made is that it's not just State law, that it's Hill which requires some evidence. And then to figure out whether there's evidence, you have to look to the State law to see how they define it. And if they unreasonably or don't apply their own law, then haven't they violated Hill? Well, again, the preliminary question is, does Hill apply? And if it doesn't apply, then it doesn't really matter how they used the sum evidence test, because they weren't bound to follow it, because the U.S. Supreme Court has never said it is the right test for evaluating under Federal law. I'd also note that Mr. Porter spoke of Willis v. Cain in terms of when is the right case and when this Court can intervene. And I'd point to Judge Callahan's dissent in the order on the stay, recognizing that this Court does need to look at Moosladen, and although she didn't cite it, we have more recently Landrigan saying that when there isn't a clearly established rule that's been greenlit by the U.S. Supreme Court, the Federal courts can't grant habeas relief. The statute is clear. And that's why this Court in another unpublished decision, Culverson, that just came out last week, cited Landrigan and Moosladen and rejected, I believe it was the tenth time he'd been reviewed as well, and that petition was denied, and properly so. And so, too, here. It's not this Court's business. It's not the district court's business to be evaluating suitability. It's examining State court decisions. Unless they're objectively unreasonable, Federal habeas relief must be denied. Thank you. Thank you. The case just argued is submitted for decision. The Court appreciates the quality of the arguments presented. We'll hear the next case, which
judges: Schroeder, Canby, McKeown